*POSTED ON WEBSITE*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | Case No. 17-24543-E-13 |
| | Docket Control No. WW-2 |
| MATTHEW BORRE, | |
| | |
| Debtor. | |

**MEMORANDUM OPINION AND DECISION**
**SUSTAINING OBJECTION TO CLAIM**
**AND**
**AWARDING ATTORNEY'S FEES**

Matthew Borre, the Chapter 13 Debtor ("Objector"), filed his objection to Proof of Claim No. 6-1 ("Objection to Claim") on October 29, 2018. Dckt. 25. Proof of Claim No. 6-1 was filed in this case by the original creditor Bank of America, N.A. ("Bank"). Carrington Mortgage Services, LLC ("Creditor") now appears as the assignee of said claims and defended Proof of Claim No. 6-1, the accuracy of the information therein, and opposed the Objection to Claim - necessitating Objector having to prosecute it.[1]

As set forth below in this Memorandum Opinion and Decision, the court sustains the majority of the Objection to Claim and determines Objector to be the prevailing party under the contractual attorney's fee provision and applicable non-bankruptcy law.

---

[1] The Objection to Claim has been set for hearing on fifty-days notice, sufficiently complying with the requirements of Federal Rule of Bankruptcy Procedure 3007(a) and Local Bankruptcy Rule 3007-1(b)(1). The first hearing was conducted on December 12, 2018, for which the court posted a tentative ruling prior to the hearing for the Parties and their respective counsel to review. The judge conducting that hearing continued the matter for a final hearing on January 15, 2018.

**REVIEW OF OBJECTION TO CLAIM**
**AND**
**OPPOSITION PRESENTED BY CARRINGTON MORTGAGE SERVICES, LLC**
**Objection to Proof of Claim No. 6-1**

Objector requests that the court disallow that portion of Proof of Claim No. 6-1 asserted by Creditor (as the assignee of Bank) to be a $1,440.33 pre-petition default (arrearage)[2] that has to be cured in this bankruptcy case. Proof of Claim No. 6-1 filed September 13, 2017, Official Registry of Claims in this case; with transfer of Proof of Claim No. 6-1 filed on October 24, 2018, Dckt. 22. The Claim is asserted to be a secured claim in the amount of $179,866.29, and expressly states a pre-petition default (arrearage) of $1,440.33 that is required to be cured in this case. Proof of Claim No. 6-1. Objector asserts that Creditor's Claim incorrectly states a pre-petition default (arrearage) where one does not exist. Objector also asserts that the Claim seeks to recover charges for unreasonably high fees for bankruptcy related services, which fees should be disallowed.

Objector filed this Chapter 13 bankruptcy case on July 11, 2018. As set forth below, Objector testifies that he attempted to make the July 2017 payment to the Bank on July 14, 2017, but that the Bank refused to accept the payment. Declaration ¶ 3, Dckt. 34. He further testifies that he ultimately made the payment to the Bank by telephone with a Bank representative on July 17, 2017. *Id.* ¶ 4.[3]

In addition to the Proof of Claim, the Bank filed a Form 410S2 Notice of Postpetition Mortgage Fees, Expenses, and Charges ("Notice") on February 9, 2018. The Notice asserts that charges of $550.00 for "Bankruptcy/Proof of claim fees" and $350.00 for "review of plan" are added to the obligation owing under the Claim. Objector argues "proof of claim" fees are unnecessary in this case because the Objector was current on the loan. Objection, Dckt. 25. Objector also argues the

---

[2]  In the pleadings, Creditor identifies the pre-petition amount as an "arrearage," while in Proof of Claim it is identified as a "default." For consistency the court refers to this asserted amount as "pre-petition default (arrearage)" to avoid confusion given the differing choice of words for the $1,440.33 at issue.

[3]  In addition to these objections to the amounts claimed, Objector also testifies that since July 2017 he was "unable to make his current monthly mortgage payments at the Bank branch, but has had to do so by telephone." Declaration ¶ 5, Dckt. 34. No explanation is provided as to why payments could not be made by mail. The issue of a refusal to accept the payment was not presented to the court in this Objection.

1   "review of plan" fees are unreasonably high. *Id*.

2       Objector requests the amount of pre-petition default (arrearage) be determined to be $0.00,

3   that the fees stated in Creditor's Notice be disallowed as unreasonably high, and that attorney's fees

4   incurred bringing this Objection be awarded to Objector.

5   **Creditor's Opposition**

6       Creditor filed an Opposition to Objector's Objection to Claim ("Opposition") on December 4,

7   2018. Dckt. 30. Creditor argues Objector has presented no "admissible evidence" to show: (1) that

8   the pre-petition payments owed to Creditor on the secured claim were current at the time of filing on

9   July 11, 2017; (2) that the payment which cleared July 18, 2017 was made and posted prior to the

10  Filing Date on July 11, 2017; and (3) that such payment was of a sufficient amount to bring the

11  account current through July 2017. Therefore, Creditor argues Objector has not carried his burden

12  of proof to negate the *prima facie* validity of Creditor's pre-petition arrears claim that had to be cured

13  in this bankruptcy case.

14      No evidentiary objection is filed with the Opposition stating the basis for asserting that "no

15  admissible evidence" has been filed by Objector. Other than stating the words, "no admissible

16  evidence" in the Opposition, nothing other than Creditor's assertion is stated on this point. No basis

17  is given for Objector's testimony not being "admissible." *See* Objector's testimony that he made the

18  July 2017 payment by telephone. Declaration ¶ 4, Dckt. 27.

19      The Opposition affirmatively asserted that there was a pre-petition default (arrearage) and that

20  Objector presented no evidence of such payment, stating:

21          Therefore, Debtor has failed to produce evidence sufficient to negate the prima facie
            validity of Secured Creditor's prepetition arrears claim in the POC. Therefore,
22          Secured Creditor respectfully requests that Debtor's Objection to Claim be denied.

23  Opposition, pp. 3:22.5-27.5, 4:1.5-2.5, Dckt. 30. Creditor, in the Opposition, continues to

24  affirmatively assert/demand payment on an asserted pre-petition default (arrearage) in the bankruptcy

25  case.[4]

26  ────────────────

27      [4] Creditor does state that the Objector asserts that the alleged pre-petition default (arrearage)
    was paid six days after the case was filed, but no evidence of such asserted payment was provided.
28  As discussed *infra*, the portion of the Claim at issue is paragraph 9 of the Claim which affirmatively

1    Creditor argues further there is no dispute as to the allowance of attorney's fees for its actions

2    to enforce its loan and protect its rights thereto, or that a Form 410S2 was required to be filed.

3    Creditor believes fees charged were reasonable, and explains the charges here were flat rate fees

4    ($300.00 for filing a proof of claim, $250.00 for filing the 410A, and $350.00 for plan review).

5    Creditor argues that notwithstanding whether Objector is current, Creditor must review any

6    Chapter 13 debtor's plan to ensure proper treatment of its claim.

7    Finally, Creditor argues Objector has not cited any legal authority entitling Objector to

8    attorney's fees.

9    Creditor provided no declarations or documentary evidence with its Opposition.

10   **December 18, 2018 Hearing**

11   At the December 18, 2018 hearing, the court continued the hearing on the Objection to allow

12   the Parties to file supplemental pleadings establishing what payments have been made in regard to

13   the Claim in support of and opposition to the Objection. Dckt. 33.

14   **Objector's Supplemental Pleadings**

15   On December 21, 2018, Objector filed the Second Declaration of Matthew Borre (who is the

16   Objector). Dckt. 34. Objector states under penalty of perjury that prior to filing this case, he would

17   make mortgage payments in the regular amount on his last payday prior to the 16th day of the month

18   due date. *Id*. at ¶ 2. Objector states further he made a payment of $1,430.00 over the phone July 17,

19   the payment having been delayed because, as discussed below, Bank refused to accept the payment

20   at a Bank branch because of the bankruptcy filing. *Id*. at ¶¶ 3, 4.

21   Objector also testifies his monthly payment prior to filing this case was $1,421.00. *Id*. at ¶ 10.

22   Beginning August 2018, payments increased to $1,530.19 after Bank increased the amount due to

23   _____

24   states:

25        Amount necessary to cure any default as of the          $     1440.33
26        date of the petition:

27   Proof of Claim No. 6-1 ¶ 9, p. 2.  This Proof of Claim was filed in September 2017, two months after
28   the case was filed, and asserts that as of the September 2018 there is a pre-petition default
     (arrearage) that was necessary to be cured.

an escrow shortage. *Id*. at ¶ 17.

Objector reasserts his argument that the fees charged by Creditor after his Bankruptcy Case was filed are unreasonable given Objector was not delinquent in payments. *Id*. at ¶¶ 18-19.

Along with Objector's Declaration, Objector filed Exhibits B through G, which consist of Objector's bank statements and transaction detail statements. Dckt. 35.

Exhibit B indicates an electronic transfer identified as a "WITHDRAWAL" (emphasis in original) in the amount of $1,430.00 being completed by Bank on July 18, 2017. Exhibit B, Dckt. 35 at 4.

Exhibits E through G reflect payments of $1,421.00 made to Bank in the months of August 2017 through July 2018, and payments of $1,530.19 in the months of August 2018 through November 2018. Exhibits E-G, Dckt. 35.

**Objector's Supplemental Reply and Additional Exhibits**

Objector filed a Supplemental Reply on December 21, 2018. Dckt. 36. Objector argues the following:

1. The evidence filed supports Objector having made the July 2018 payment despite Bank having locked Objector out of his account. Objector further argues the evidence supports that the monthly payment owing was $1,421.00.

2. California Civil Code section 1717 provides for prevailing party attorney's fees here.

3. Creditor failed to provide notice of a payment change when it changed the amount owing in August 2018. Objector argues Bankruptcy Rule 3002.1 requires notice no later than 21 days before the due date of the new payment.

4. Creditor's fees associated with review of this case are unreasonable and have not been supported with evidence. Objector states Creditor's flat fee rates–one for a proof of claim, and one for review, analysis, and filing of the court mandated 410A mortgage proof of claim, are duplicative. Objector asserts the failure of Creditor to provide notice of the change to mortgage payment evinces that the fees are were unreasonable.

5. Objector incurred $2,625.00 in attorney's fees in bringing this Objection to Claim; $2,065.00 represents time spent at and after the December 18, 2018 court appearance as a result of Creditor's request for additional evidence.

Objector requests in its Reply that the court sustain Objector's Objection and award Objector's attorney's fees.

Along with Objector's Reply, Objector filed Exhibit H, a bank transaction statement showing

an increase in mortgage payments ; Exhibit I, an itemized billing statement from Objector's counsel; and Exhibit J, a Monthly Mortgage Statement from Creditor. Dckt. 37.

The Monthly Mortgage Statement issued by Creditor dated December 14, 2018, (approximately 18 months after the bankruptcy case was filed and six weeks after this Objection was filed) includes information about the current monthly payment (showing an overpayment of $120.82), payments year to date, and expressly stating: "**SUMMARY OF AMOUNTS DUE BEFORE BANKRUPTCY FILING (Pre-Petition Arrearage)**." Exhibit J, Dckt. 37 at 14 (emphasis in original). It goes further to provide the following information about what Creditor (who sent the Notice) asserts is due and owing from Debtor:

| | | |
|---|---|---|
| Paid Last Month: | $0.00 | This box shows amounts that were past due when you filed bankruptcy. It may also include other allowed amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular payments |
| Total Paid During Bankruptcy | $0.00 | |
| Current Balance | $2,340.33 | |

*Id.* As stated in Creditor's December 2018 Monthly Mortgage Statement, the $2,340.33 is an amount of the pre-petition default (arrearage) for which "The Trustee is sending us [Creditor] payments," which necessitates the Debtor funding the Chapter 13 plan to pay Creditor through the Trustee.

As of the December 2018 Notice from Creditor, it affirmatively stated that there was a "current balance" of $2,340.33 for the asserted pre-petition default (arrearage) and other amounts that were owing and unpaid. The asserted pre-petition default (arrearage) of $1,440.33 and $900.00 for bankruptcy related legal fees totals $2,340.33 - exactly the amount which in December 2018 Creditor stated was the balance due for the asserted pre-petition default (arrearage) and other amounts that made up the "current balance."

**Creditor's Supplemental Pleadings**

On December 27, 2018, Creditor filed the Declaration of Bonni Mantovani, Creditor's bankruptcy counsel, Re: Status of Objector's Objection To Claim. Dckt. 39. The Declaration states the following:

    1.        This court tentatively ruled that prepetition arrears for Proof of Claim No. 6-1

should be zero based on evidence provided by Objector. Dckt. 39 at ¶ 9.

2.     The court tentatively overruled Objector's objection to the Secured Creditor's Notice of Postpetition Fees that had been filed and Objector's counsel's request for attorney fees. *Id.* at ¶ 10.

3.     At the December 18th hearing, Objector and Creditor submitted to the Tentative Ruling on all issues except the Objection to Claim. *Id.* at ¶ 11.

4.     Creditor requested the court allow informal resolution of the dispute. *Id.* at ¶ 12.

5.     After receiving evidence from Objector on December 21, 2018, by email, Creditor confirms Objector paid the full amount of the July 2017 payment. *Id.* at ¶¶ 17, 20.

6.     Creditor intends to file an Amended Claim to resolve the objection. *Id.* at ¶ 21.

No testimony is provided by a knowledgeable representative of the Creditor or the Bank, the persons who would have the business records relating to the transactions underlying the Objection and Proof of Claim N. 6-1 is based. Counsel for Creditor appears to repeat information she heard her client say as to confirming, finally as of around December 21, 2018, that the July 2017 payment had been received in July 2017.

Ms. Mantovani testifies that at some time after December 21, 2018 and before December 27, 2018 (date of the Declaration) Creditor confirmed for Ms. Mantovani that there was no pre-petition default (arrearage) that was unpaid. While a simple amended proof of claim could have been filed sometime before December 27, 2018 (when Creditor's Counsel was completing her Declaration and other reply pleading that were filed on December 27, 2018), Amended Proof of Claim No. 6-1 was not filed until January 15, 2019, twenty days later and the day of the second hearing on the Objection.

Amended Proof of Claim No. 6-2, which no longer asserts that there was an amount necessary to cure a pre-petition default (arrearage) was signed by Ms. Mantovani, counsel for Creditor, so it does not appear that a "the one person at the client's office who could sign a proof of claim was not available until the morning of the second hearing" rationale could be offered as an excuse for the amended proof of claim not being promptly filed.

## DISCUSSION

As of January 14, 2019, in preparing for the continued hearing, a review of the Claims Register showed no Amended Claim for Proof of Claim No. 6-1 having been filed. On January 15,

2019, the day of the continued hearing an Amended Proof of Claim No. 6-2 was filed by Creditor, in which the "Amount necessary to cure any default as of the date of the petition" is stated to be $0.00. This was seventy-eight (78) days and two hearings after the Objection was filed.

**Review of Applicable Law**

The Bankruptcy Code provides in 11 U.S.C. § 502(a) that a claim for which a proof of claim is filed is deemed allowed unless a party in interest objects. Once an objection has been filed, the court may determine the amount of the claim after a noticed hearing. 11 U.S.C. § 502(b).

It is settled law in the Ninth Circuit that the party objecting to a proof of claim has the burden of presenting substantial factual basis to overcome the *prima facie* validity of a proof of claim, and the evidence must be of probative force equal to that of the creditor's proof of claim. *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991); *see also United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 210 (B.A.P. 9th Cir. 2006).

In making that ruling in *Holm*, the Ninth Circuit Panel quoted the then COLLIER ON BANKRUPTCY treatise on this point:

> The burden of proof on this issue is dispositive.
>
>> Inasmuch as Rule 3001(f) and section 502(a) provide that a claim or interest as to which proof is filed is "deemed allowed," the burden of initially going forward with the evidence as to the validity and the amount of the claim is that of the objector to that claim. In short, the allegations of the proof of claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they *prima facie* establish the claim. Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves. But the ultimate burden of persuasion is always on the claimant. Thus, it may be said that the proof of claim is some evidence as to its validity and amount. It is strong enough to carry over a mere formal objection without more.
>
> 3 L. King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991) (footnotes omitted) (emphasis added). Holm has the initial burden of proof to demonstrate facts tending to demonstrate that this claim contains unmatured interest.

*In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991). As noted, this shifted the initial burden to the objecting debtor having to "demonstrate facts tending to demonstrate" the reason the claim is not as filed. The burden of proof for the claim ultimately rests on the creditor. *Id.*

As provided in 11 U.S.C. § 1322(b)(2), a Chapter 13 plan may modify the rights of a creditor having a secured claim, "other than a claim secured only by a security interest in real property that is the debtor's principal residence . . ." Such is the secured claim asserted originally by the Bank and now by Creditor in the Claim. Unless objected to, the claim as asserted in the proof of claim is *prima facie* evidence of such claim, which in this case, must be provided for in the Chapter 13 Plan - including the asserted unpaid, pre-petition default (arrearage(s)) stated in the proof of claim.

To avoid any confusion on this point, the Chapter 13 Plan in this District has long expressly provided, as it does in this case:

**Section 2. Claims and Expenses**

A. Proofs of Claim

**2.01**.   With the exception of the payments required by sections 2.02, 2.03, 2.11, and 3.01, a claim will not be paid pursuant to this plan unless a timely proof of claim is filed by or on behalf of a creditor, including a secured creditor.
. . .
**2.04**.   **The proof of claim**, not this plan or the schedules, **shall determine the amount** and classification **of a claim** <u>unless</u> the court's <u>disposition of a claim objection</u>, valuation motion, or lien avoidance motion <u>affects the amount</u> or classification of the claim.

Plan, Dckt. 5 at 1 (emphasis added). The court is confident that the Bank and Creditor's Counsel are well aware of this provision. A search of the court's files discloses that Creditor's Counsel's law firm appears in 378 cases just in the Eastern District of California. The individual attorney, Bonni Mantovani, appears in 196 cases, again, just in the Eastern District of California.

A quick review of the cases in which the Creditor's Counsel's law firm or individual attorney appeared in which an asserted pre-petition default (arrearage) in a proof of claim was presented as solid, absolute grounds to deny confirmation include:

A.   *In re Miller*, Bankr. E.D. Cal. No. 18-25780. In the Objection to Confirmation, in *Miller* Counsel asserts -

"The Proof of Claim to be timely filed by Secured Creditor will reflect approximate prepetition arrearage in the amount of $6,000.00. No arrears were listed in the Plan. Accordingly, even if all payments were tendered pursuant to the Plan, they will not be sufficient to satisfy Secured Creditor's claim in full. Thus, the Plan does not provide adequate protection of this creditor's interests as required by 11 U.S.C. §361, and does not meet the "feasibility" requirement of 11 U.S.C. §1325(a)(6)."

9

*In re Miller*, 18-25780, Objection to Chapter 13 Plan, pp. 2:5.5-10.5; Dckt. 31. Counsel's creditor client in the *Miller* case, Carrington Mortgage Services, LLC, asserted that based solely on stating a default (arrearage) in a proof of claim, a Chapter 13 plan that did not provide for that default (arrearage) was unconfirmable. The objection in *Miller* based on the amount of the default (arrearage) stated in the proof of claim not being paid through the Chapter 13 plan was filed on November 8, 2018 - which was prior to the initial hearing on the Objection to Claim.

   B. *In re Swanson*, Bankr. E.D. Cal. No. 17-27444. In *Swanson*, Counsel's creditor client makes exactly the same objection to confirmation based upon the amount of the arrearage stated in the proof of claim, stating in the Objection -

> "11 U.S.C. §1325(a)(5)(B)(ii) requires full payment of the allowed claim of this objecting Secured Creditor. The Proof of Claim which will be timely filed by Secured Creditor will approximate over $5,000.00. The Plan does not reflect the arrears that are due. Accordingly, even if all payments were tendered pursuant to the Plan, they will not be sufficient to satisfy Secured Creditor's claim in full. Thus, the Plan does not provide adequate protection of this creditor's interests as required by 11 U.S.C. §361, and does not meet the "feasibility" requirement of 11 U.S.C. §1325(a)(6)."

*In re Swanson*, 17-27444, Objection, p. 2:6.5-12.5; Dckt. 17. While the above language does not expressly state that it is a "pre-petition default (arrearage)," the Declaration of Counsel's client in *Swanson* is clear on this asserted pre-petition default (arrearage) point, testifying, "As of November 10, 2017, [the date the *Swanson* bankruptcy case was filed] the approximate amount of the default is $5,000 . . . " *Id.*, Declaration ¶ 7. The filing of the objection in *Swanson* was on December 17, 2017 – which was three hundred and sixteen (316) days before the filing of the Objection to the Claim in the case now before the court.

   C. *In re Melms*, Bankr. E.D. Cal. No. 14-21205. In *Melms*, Counsel and her law firm asserted the same objection to confirmation based on the amount of the pre-petition default (arrearage) stated in a proof of claim for their creditor client Wells Fargo Bank, N.A., stating -

LACK OF ADEQUATE FUNDING

> The Plan is not adequately funded. 11 U.S.C. §1325(a)(5)(B)(ii) requires full payment of the allowed claim of this objecting Secured Creditor. There is an arrearage amount due which has not been accurately provided for

in the Plan. The Plan is insufficient to cure the pre-petition arrears owed to Secured Creditor. The actual arrearage amount will be disclosed in a timely filed Proof of Claim by June 11, 2014. Accordingly, even if all payments are tendered pursuant to the Plan, they will not be sufficient to satisfy Secured Creditor's claim in full.

### IMPROPER ATTEMPT TO MODIFY LOAN IN VIOLATION OF 1322(b)(2)

The proposed Chapter 13 Plan cannot modify Secured Creditor's claim by providing less than the full amount due for arrearage on the secured claim. Pursuant to 11 U.S.C. Section 1322(b)(2), Secured Creditor's debt must be paid in full.

*In re Melms*, 14-21205, Objection, p. 2:7-17; Dckt. 17. The objection to confirmation in *Melms* was filed by Ms. Mantovani, Creditor's Counsel, on March 1, 2014 – one thousand seven hundred and three (1,703) days before the October 29, 2018 filing of the Objection to the Claim in the case now before the court.

The court stopped with its review of cases in which Counsel and her law firm demonstrate knowledge that what is asserted in the proof of claim as a pre-petition default (arrearage) is the amount to be cured has to be paid through the Chapter 13 plan, unless the debtor or trustee prosecutes an objection to the claim. As shown above, Counsel and her law firm clearly understand that such a statement of default is not merely a historical, academic statement, for years before defending the default stated in the Claim in this case, but an action that forces payment of that amount through the plan.

### SUSTAINING OBJECTION TO ASSERTED PRE-PETITION DEFAULT TO BE CURED OF $1,440.33 STATED IN PROOF OF CLAIM NO. 6-1

This Objection begins with challenging Creditor's assertion in Proof of Claim No. 6-1, and continuing through its opposition to the Objection, that there was a pre-petition default (arrearage) of $1,440.33 owing to Creditor to be paid in this Chapter 13 case. *See* Proof of Claim No. 6-1, ¶ 9. As discussed above, the stated default (arrearage) in the Claim required Objector to pay that amount through the Chapter 13 Plan to cure the default (arrearage) as stated in the Claim (which is *prima facie* evidence of such amount being owed). With the default (arrearage) to be cured amount stated in the Claim, Objector was compelled to object to the Claim if Creditor would not amend the Claim to accurately state that there was no such default (arrearage) to be cured in the Chapter 13 case.

11

Evidence presented by Objector establishes, and now Creditor agrees (as documented by the January 15, 2019 filing of Amended Proof of Claim No. 6-2 and as stated at the January 15, 2019 second hearing on this Objection), the payment due on or before July 16, 2017, was paid prior to the filing of the Claim on September 4, 2017. As the evidence shows, the payment was made by Objector on July 17, 2017. Creditor filed Amended Proof of Claim No. 6-2 on January 15, 2019, now stating that there was no default (arrearage) to be cured in this case for that claim.

While now admitting that there is no pre-petition default (arrearage) that is necessary to be cured, it was not until the January 15, 2019 second hearing on this Objection that Creditor ceased asserting that there was a pre-petition default (arrearage) that had to be cured in this case. As discussed above, even in its December 14, 2018 Monthly Mortgage Statement on Creditor's letterhead, Creditor continued to assert that there was a "Current Balance" of $2,340.00 of "**AMOUNTS PAST DUE BEFORE BANKRUPTCY FILINGS (Pre-Petition Arrearage)**," for which payments were to be made to Creditor through the Chapter 13 Trustee. Exhibit J, Dckt. 37 at 14 (emphasis in original).

Creditor repeatedly asserted that the *prima facie* effect of a proof of claim, citing to the *Holm* case, placed the burden on Objector to "prove" (not merely provide probative evidence equal to the allegation as stated in the proof of claim) that the default did not exist. Creditor then concluded, without providing any grounds, that Debtor's testimony was inadmissible. Creditor did acknowledge that if the Objector could rebut the *prima facie* effect of the Claim, then it would be on Creditor to then prove the claim and the pre-petition default (arrearage) asserted existed in Proof of Claim No. 6-1. However, Creditor stood fast in its legal conclusion (without stating any evidentiary objection or grounds for the evidence not being admissible) that the evidence presented was not admissible and the Objection had to be overruled (thereby preserving the asserted pre-petition default (arrearage) stated in Proof of Claim No. 6-1). Opposition, pp. 3:6.5-16.5; Dckt. 30.

As addressed above, Creditor bases its Opposition in part on the assertion that Objector has produced no "admissible evidence" of the $1,421.00 payment having been made in July 2017, or that it was sufficient to "bring the account current" as of July 2017. *Id.*, pp. 3:25.5 - 4:2.5. In making this statement, Creditor offers no reason why the testimony under penalty of perjury by the Objector of

1  making the payment is not "admissible." Creditor made no evidentiary objection to the Objector's

2  Declaration or the testimony under penalty of perjury therein.[5]

3        Based on Creditor's unsupported assertion that the personal knowledge testimony of Objector

4  is not admissible, Creditor concludes, "Therefore, [Objector] has failed to produce evidence sufficient

5  to negate the prima facie validity of Secured Creditor's pre-petition arrears claim in the POC." *Id.*,

6  p. 4:2.5-3.5. Creditor's asserted conclusion of law is in error.

7  **Misstated Information in Proof of Claim No. 6-1**

8        At the January 15, 2019 hearing, Creditor continued to argue against the court sustaining the

9  Objection, basing such contention on Creditor's misreading of the language stated in Proof of Claim

10  6-1. The language focused on is found in Part 2, Paragraph 9 of the Claim, which requires the

11  creditor to provide the following information:

12          <u>Amount necessary to cure</u> any default as of the
        date of the petition:               $_____

13

14  Proof of Claim No. 6-1, p.2 (emphasis added). The court addresses this language, and Creditor's

15  incorrect reading thereof, below.

16        In responding to Question 9 in Proof of Claim No. 6-1, it is affirmatively stated that the

17  amount of the pre-petition default (arrearage) as of the commencement of the bankruptcy case and

18  which was necessary to be cured was "$1,440.33." As discussed above and at the hearing, that is the

19  amount of the July 2017 mortgage payment which though not yet paid when the case was filed, was

20  not in default when the bankruptcy case was filed. The period in which timely payment could be

21  made had not expired (and therefore was not in default) as of the commencement of the case.

22  Objector provides his testimony that such amount was paid by the Objector on July 17, 2017, using

23  the Bank telephonic payment system. Declaration ¶ 4, Dckt. 34. Further, that it had to be paid by

24  _____

25       [5] As provided in Federal Rule of Evidence 402, relevant evidence is admissible unless

26  provided otherwise in the United States Constitution, federal statute, Federal Rules of Evidence, or
other rules prescribed by the Supreme Court. No such Constitutional, statutory, or rule basis for

27  excluding the personal knowledge testimony of the Objector (Fed. R. Evid. 601, 602) as to the
relevant factual question of whether the July 2017 payment had been made or was in default is

28  identified by Creditor.

1  phone that day because the Bank refused to accept payment prior to that time at one of the Bank's

2  branch offices.

3       Objector testifies that he went to the Elk Grove Branch of the Bank on July 14, 2017, to make

4  the payment in person, but the Bank representative would not accept the payment.  Declaration ¶ 3,

5  *Id.*  Objector testifies that the reason given for the refusal to accept the payment is as follows:

6
7       When I attempted to make my payment I was told that I was unable to access the
        account because I had filed a bankruptcy case. I was not allowed to make my regular
        payment. The lady could only give me a number to call, but I was not able to reach
8       anyone before 5:00 p.m., so I had to wait until after the weekend.

9  *Id.*

10      Thus, by July 17, 2017, the July 2017 payment had been made, was not in default, and was

11  not an unpaid "pre-petition default (arrearage)" which the Objector had an obligation to pay.  In

12  September 2017, the character of this July 2017 payment was not in default, was not unpaid, and was

13  not in default.  Therefore, it was not "an amount necessary to cure any default as of the date of the

14  petition [date the bankruptcy case was filed]."

15      Creditor has elected to provide no counter testimony to Objector's testimony.  The only

16  Declaration filed by Creditor is that of its bankruptcy counsel.  Dckt. 39.  In it she testifies as to

17  Creditor's strategy and that the Opposition is based on the contention that the July 2017 payment had

18  not been made as of the July 11, 2017 filing of the bankruptcy case.  No testimony of any Bank

19  representative is provided that would put in question Objector's testimony that he attempted to timely

20  pay the July 2017 installment on July 2017.

21      Additionally, the undisputed testimony of Objector is that he attempted to timely pay this

22  obligation within the fifteen calendar day period after July 1, 2017, but the Bank refused to accept

23  the payment and no person was available to speak with Objector when he called the phone number

24  provided to him by the Bank representative at the Bank.  Because the next day was  a Saturday (the

25  14th day after July 1, 2017), Objector could not reach anyone at the Bank until Monday, July 17,

26  2018, the 16th day after July 1, 2017.  Based on the evidence presented, which has not been rebutted

27  by Creditor, it was the Bank that refused the payment, not the Debtor who failed to timely make the

28  payment for July 2017.

Further, the evidence establishes that as of July 10, 2017, there was no default in the July 2017 payment, the Debtor having until July 16, 2017, (which was a Sunday) to timely make the July 2017 payment.

**Creditor's Misreading of the Plain Language of
Question 9 on Proof of Claim No. 6-1**

In its pleadings and as amplified during oral argument at the hearing, Creditor reads the Paragraph 9 Question to be asking for the following information (as paraphrased by the court):

> The amount of the default that could be asserted to have existed as to the date the bankruptcy case was filed, without regard to whether such default actually existed, the time for timely payment had not yet expired, or whether such amount was actually unpaid as of the time the proof of claim is filed.

Thus, for Creditor, the information is: (1) hypothetical information of what could have been a default if an amount not yet in default was not paid post-petition or (2) actual information of a default that existed as of filing, but without regard to any payments actually made after the case was commenced, and whether such default existed that was required to be cured through the Chapter 13 plan.

Based on this interpretation, Creditor contends that the statement in the Claim is accurate because -

- The $1,440.33 for the July 2017 payment, which would not be in default until July 16, 2017 (or possibly July 17th since July 16th fell on a Sunday) had not been made as of the July 11, 2017 filing of the case;

- Such would be a default in the future if it was not subsequently timely paid at the later date after the case was filed; and

- Even though the July 2017 payment had been made on July 17, 2017, and there was no obligation for the $1,440.33 as of the September 2017 filing of Proof of Claim No. 6-1:

  - it is proper for Creditor to state that there was such a default that was necessary to cure in the bankruptcy case,

  - the court is to look no further than July 11, 2017 hypothetical analysis and,

  - Creditor does not have to show and the court shall not determine whether such asserted default as stated in Proof of Claim No. 6-1 actually existed as of the filing of Proof of Claim No. 6-1.

15

As is clear from the discussion at the hearing, the court does not read the plain language of Question 9 of the Claim as does Creditor. The court does not read it to request a historical, hypothetical recitation of what could have been a possible future default.

First, the language in Paragraph 9 expressly requests the "Amount necessary to cure . . . " To be necessary to cure, there must be an unpaid obligation that is in default.[6] This is requesting what portion of the claim is the pre-petition default (arrearage) amount, which amount must be cured (paid) through any Chapter 13 plan. If not paid the amount stated in the *prima facie* proof of claim, Objector could not confirm a Chapter 13 Plan.

To be an "amount" necessary to cure, there must be a default - an unpaid amount that arose pre-petition. If there is not an unpaid amount of a pre-petition obligation when the proof of claim is filed, then there can be no "Amount necessary to cure any default as of the date of the petition" to be stated in the proof of claim. The Claim erroneously states that as of September 4, 2017, there is a pre-petition default (arrearage) that is necessary to be paid to cure the default. No such default existed as it was paid on July 17, 2017 (after the Bank refused to accept the payment on July 14, 2017).

It is not uncommon in Chapter 13 bankruptcy cases, as in this case, where there is not a pre-petition default (arrearage) on the debt for the debtor to continue to make the home mortgage payments directly to the creditor, not through the Chapter 13 trustee. The Chapter 13 Plan in this District so provides for the Class 4 Secured Claims. Plan ¶ 2.11, Dckt. 5. Though stated in the Claim, the Bank did not object to confirmation or assert that there was an unpaid pre-petition

---

[6] Black's Law Dictionary (10th ed. 2014) provides the following definitions of the word cure as it relates to the present proof of claim:

> cure vb. (14c) To remove one or more legal defects to correct one or more legal errors. • For example, curing title involves removing defects from title to unmarketable land so that title becomes marketable.

and

> cure of default A debtor's act to correct its failure to perform, or to refrain from performing, according to the terms of an agreement.

16

1   obligation (the July 2017 payment).

2   **Even Under Creditor's Incorrect Interpretation of Question 9,**
    **Based on the Terms of the Note There Was**
3   **No Pre-Petition Default (Arrearage) to Cure**

4          In this bankruptcy case, the Chapter 13 Plan filed on July 11, 2017 (the same day the

5   bankruptcy case was commenced), expressly provides for Objector to continue to make the post-

6   petition payments directly to the Bank.  Plan ¶ 2.11, Dckt. 5 at 4.

7          This bankruptcy case was filed on July 11, 2017.  Attached to the Claim is a copy of the Note

8   upon which Creditor bases its claim in this case.  The terms of the Note require the monthly payment

9   is due on the first day of each month and may timely be paid, and not constitute a default, if paid

10  within fifteen days thereafter as provided in the Note upon which Creditor asserts its claim:

11         6. BORROWER'S FAILURE TO PAY

12                (A) Late Charge for Overdue Payments

13                If Lender has not received the full monthly payment required by the Security
              Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar
14            days after the payment is due, Lender may collect a late charge in the amount of
              FOUR percent ( 4.00 % ) of the overdue amount of each payment.
15

16  Note ¶ 6.(A), Attachment 1 to Proof of Claim No. 6-1, p. 17.

17         The above Note (contractual) provision states that a payment is not "late," in default, until

18  fifteen calendar days after the payment is due - the first day of each month.  Fifteen calendar days

19  after the first day of July 2017 is July 16, 2017.

20         Thus, if Creditor's interpretation of Claim Question 9 is that it requests only a historical

21  snapshot as to what default existed as of the day the bankruptcy case is filed, then there could be no

22  "default" and no "arrearage" as of the bankruptcy case when it was filed on July 11, 2017.  The

23  Objector had until July 16, 2017, to timely make that payment before it would be in "default" and

24  there would be an "arrearage."  Creditor's interpretation of Question 9 on the Claim requiring only

25  a snapshot of the loan as of the July 11, 2017 filing date of this case compels the determination that

26  there was no "default" and no "arrearage" owing as of July 11, 2017, because Objector still had five

27  days to timely make the July 2017 payment.

28  ///

                                            17

**Uncertainty of Creditor's Claim**

At the December 18, 2018 hearing, Creditor acknowledged it was "uncertain" what was paid by Objector. Creditor stated that it did not receive detailed documentation from the previous creditor, the Bank, showing what payments were made, and therefore was relying on the Claim (without any actual evidence to support that reliance, and in the face of Objector's Declaration establishing evidence Objector made the full payment).

In making this argument, Creditor offers no legal basis by which it could assert it was owed money, for which it had no record, no documentation, and could not provide any evidence that it was owed the money. Rather, Creditor treats the Claim and being the assignee of a proof of claim as a free ticket to demand what it wants, without regard to not having any evidence or knowledge thereof, and place the burden on a debtor to provide Creditor with the information of what Creditor is actually owed.

One of the reasons that a proof of claim can be given *prima facie* evidentiary value is because:

(1) The information stated therein is stated under penalty of perjury. See Proof of Claim No. 6-1, Part 3.

(2) The creditor and person filing the proof of claim certify:

> I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

*Id.*

With respect to this certification, it appears "inaccurate" with respect to the Claim filed on September 13, 2017, in that it does not give Debtor "credit" for the payment received on July 17, 2017.

(3) "A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571." *Id.*

Filing a proof of claim is not merely a series of allegations based on information and belief, which if true, might support the relief requested (such as when filing a complaint). The filing of a proof of claim is much more significant and the statements therein are provided with, and subject to, higher standards.

1    Creditor then made the conscious decision that, rather than accepting Objector's declaration

2    or quickly obtaining the documentation of what it claimed to be owed, to advance its arguments

3    (without evidence) that Objector owed a pre-petition default (arrearage) of $1,440.33 and asserting

4    that the onus was on Objector to prove Creditor was not owed the pre-petition default (arrearage)

5    stated in Proof of Claim No. 6-1.  Essentially, Creditor determined it was more cost-effective in this

6    contested matter to have Objector perform the reasonable investigation and provide the

7    documentation of what Creditor purchased from the Bank than for Objector to have obtained the

8    information when it acquired the claim or promptly obtain the information in the fifty (50) days

9    between the Objection being filed and the December 18, 2018 hearing on the Objection.

10    Creditor's failure to obtain the information supporting the claim it was demanding payment

11    on, whether when it acquired the claim or when it received the Objection (or earlier communication

12    about the asserted default (arrearage) from Objector's counsel) is not a defense to the Objection.

13    **Sustaining Objection to Proof of Claim No. 6-1**

14    The court sustains the Objection to the Claim and disallows the claim asserting the pre-

15    petition default in the amount of $1,440.33 as stated in the Claim in that amount or any other asserted

16    pre-petition default amount.  Objector has presented the court with evidence that no such default

17    existed and that the July 2017 regular monthly payment on the obligation upon which the Claim is

18    based was timely paid in July 2017.  No pre-petition default necessary to be cured existed when the

19    Claim was filed on September 13, 2017, or did ever exist.

20    Creditor's attempt to recant its assertions of such a default, its continued opposition to the

21    Objection on this asserted default, and the filing of Amended Proof of Claim at the 47th hour, 59th

22    minute before the second hearing on the Objection (the first 24 hours passing with the first hearing

23    at which Creditor continued to assert that the Objection should be overruled and the default in the

24    Claim stand) does not gut the Objection or preclude the court from sustaining it and finally deciding

25    this issue (as opposed to dismissing it and then Creditor possibly filing a third amended proof of

26    claim reasserting a pre-petition default).  The final adjudication of this dispute was necessary and

27    proper.

28    ///

1

2

**OVERRULING OBJECTION TO**
**FEES INCIDENTAL TO FILING**

3      Objector asserts that Creditor's fees of $550.00 for "Bankruptcy/Proof of claim fees" and

4 $350.00 for "review of plan" are unreasonably high. The court disagrees with this contention.

5      The rationale for requiring the filing of a formal proof of claim or interest in accordance with

6 section 501 is based upon ensuring that "all those involved in the proceeding will be made aware of

7 the claims against the debtor's estate." 4 COLLIER ON BANKRUPTCY P 501.01[1] (16th 2018). A

8 creditor is entitled to enforce its loan and protect its rights. Creditors do not merely file proofs of

9 claim where pre-petition defaults (arrearages) are owing. There is no assertion that Creditor is not

10 entitled to recover as part of its secured claim reasonable attorney's fees and costs necessary for

11 asserting its claim in the bankruptcy case. Objector's dispute arises over the amount and

12 reasonableness of such fees.

13      In the Reply, Objector continues to argue the $550.00 fee is unreasonable. In its Opposition,

14 Creditor argued the $550.00 flat fee is broken down into two components: a $300.00 flat fee for the

15 Proof of Claim and a $250.00 flat fee for preparing, review, analysis, and filing of the court mandated

16 410A Mortgage Proof of Claim. Dckt. 30 at p. 5:1-3. Objector in its Reply argues these fees are

17 duplicative, as it consists of two flat fees for filing the proof of claim.

18 **Overruling Objection to Fees**

19      As discussed above, the filing of a proof of claim is not a "throwaway action," but an

20 assertion of rights given a high evidentiary significance and something which is relied upon by the

21 debtor, trustee, other parties in interest, and the court. Including actual attorney review and

22 involvement is reasonable to ensure that the creditor complies with the law and "gets it right."

23      Though in this case the Bank's counsel did not make sure that the Bank got it right, that does

24 not mean the amounts sought were not reasonable. To the extent that the Bank or its successor ended

25 up getting its tail twisted for the Claim being inaccurate, such will be left for the Bank or its successor

26 in addressing the services provided with such attorneys.

27      Charging $300.00 for a knowledgeable attorney to review a secured claim to make sure that

28 it is legally proper, has the necessary documents attached, and properly sets forth a creditor's right

20

1  to be paid is not unreasonable.  Such could be for around one-half to three-quarters of an hour's time

2  for a knowledgeable bankruptcy attorney in the Eastern District of California.  For the mortgage

3  claim, there is additional information to be filed in the Mortgage Proof of Claim Attachment, which

4  reasonably requires more attorney time.  Here, it is an additional $250.00.  All told, the $550.00 is

5  not an unreasonable fee for an attorney to review the claim documents, communicate with the client,

6  and make sure the proof of claim itself and the Mortgage Proof of Claim Attachment are properly

7  completed and all of the required documents included.  Further, the additional $350.00 to review the

8  proposed Chapter 13 Plan, consider how it may, or may not, properly provide for a creditor's secured

9  claim (even if there is not a pre-petition default) is not unreasonable.

10        The court overrules the Objection as it is made to the $900.00 in fees relating to the proof of

11  claim.

### DETERMINATION OF  PREVAILING PARTY
### ATTORNEY'S FEES AND COSTS

14        In the Objection, Objector requests attorney's fees.  The Objection states that both the Note

15  and Deed of Trust upon which the Claim is based have attorney's fees provisions.  Objection ¶ 7,

16  Dckt. 25.  In the Supplemental Reply filed by Objector, the claim for attorney's fees is dialed-in to

17  specific provisions of both the Note and the Deed of Trust.  Reply, p.3:2-5; Dckt. 36.  Objector then

18  cites to California Civil Code section 1717 which makes such attorney's fees reciprocal for the

19  prevailing party in an action on the contract, even if the attorney's fees provision is drafted to apply

20  to only one party to the contract.

21        In contested matters, generally the request for attorney's fees may be made by a "post-

22  judgment (order)" motion.  Fed. R. Bankr. P. 9014, 7054, and Fed. R. Civ. P. 54.  The United States

23  Supreme Court in amending Federal Rule of Bankruptcy Procedure 7008 and 7054 deleted the

24  requirement that the right to attorney's fees be stated as a claim in the complaint or motion.

25        Here, Objector is the prevailing party in this contested matter.  The court has sustained the

26  Objection to the asserted pre-petition default that was necessary to be cured as stated in the Claim.

27  The Objection was necessary, as shown by Creditor's continued opposition to the Objection and

28  attempting to preserve such asserted pre-petition default by disputing that the evidence presented of

1    payment and there being no default by merely asserting that the evidence was "not admissible"

2    (without stating any specific grounds for an evidentiary objection or presenting conflicting evidence).

3    Then, even when apparently capitulating in December 2018 that Creditor confirmed that there was

4    no pre-petition default and the July 2017 payment had been received, Creditor failed to actually file

5    Amended Proof of Claim No. 6-2 to terminate the *prima facie* evidence of the Claim until the day of

6    the second hearing.  Objector was required to have Objector's attorney continue in the prosecution

7    of the Objection through the January 15, 2019 hearing.

8             California Civil Code § 1717 addresses substantive state law making contractual attorney's

9    fees provisions reciprocal, stating:

10

11             (a) In any action on a contract, where the contract specifically provides that attorney's
                 fees and costs, which are incurred to enforce that contract, shall be awarded either to
12               one of the parties or to the prevailing party, then **the party who is determined to be
                 the party prevailing on the contract, whether he or she is the party specified in
13               the contract or not, shall be entitled to reasonable attorney's fees** in addition to
                 other costs.
14               . . .
                 (b)
15               (1) **The court**, upon notice and motion by a party, **shall determine** who is **the party
                 prevailing** on the contract for purposes of this section, whether or not the suit
16               proceeds to final judgment. Except as provided in paragraph (2) [dismissals], the
                 **party prevailing** on the contract **shall be the party who recovered a greater relief
17               in the action** on the contract. The court may also determine that there is no party
                 prevailing on the contract for purposes of this section.

18   WITKIN CALIFORNIA PROCEDURE, 5th Edition, Judgment § 194 provides a detailed discussion of cases

19   determining who is the prevailing party attorney's fees that "recovered a greater relief in the action."

20   The party need not prevail on all claims asserted.  The party need not obtain a monetary recovery.

21   *See Sears v. Baccaglio*, 60 Cal.App.4th 1136 (1998) as a case cited by WITKIN for a discussion of

22   many of the prevailing party principles, including that "The trial court 'is given wide discretion in

23   determining which party has prevailed on its cause(s) of action . . . ' [Citation]' (*Nasser v. Superior

24   Court supra*, 156 Cal.App.3d at p. 59, Cal.Rptr. 552.)"

25             The Objector is the party who recovered the greater relief in this contested matter.  If not

26   objected to, the Claim required payment of the $1,440.33 asserted pre-petition default.  Since

27   Objector's Plan did not provide for that, the confirmed plan and this Chapter 13 case were put in peril

28   of dismissal.  Creditor repeatedly opposed the Objection, asserting that Objector had not proved (at

                                                    22

1    least to Creditor's satisfaction) that the pre-petition asserted default by Creditor did not exist.

2        While Creditor prevailed on that portion of the Objection that related to the $900.00 in

3    attorney's fees relating to the inaccurate Claim, that is a minor accomplishment in comparison to

4    Objector overcoming the asserted pre-petition default (arrearage) stated in Proof of Claim No. 6-1,

5    saving Objector's Chapter 13 Plan (which did not provide for payment of such asserted pre-petition

6    default (arrearage)), and Objector's Chapter 13 Case.

7        Objector shall file, thereby potentially incurring additional necessary attorney's fees, a post-

8    judgment motion for attorney's fees (as they relate to the claims Objector prevailed on), and costs

9    in this contested matter, including in the request costs that would be included in a Bill of Costs.[7]

10   The court is confident Objector's counsel appreciates that reasonable attorney's fees and costs relate

11   to the issues Objector prevailed on and that the attorney's fees are those that actually relate to the

12

13       [7] At the hearing, Creditor indicated that it was concerned that the court was imposing
     attorney's fees as a "punishment" on Creditor. As Creditor knows, the attorney's fees at issue are

14   pursuant to the contractual attorney's fees provisions in Creditor's Note and Deed of Trust.
     California substantive law makes these provisions reciprocal. The Parties are contractually bound

15   to pay the reasonable and necessary costs of the other prevailing party in the event of litigation over
     a dispute regarding the obligations under the Note and Deed of Trust. There is no "penalty," but the

16   enforcement of a contractual provision. (The court would be shocked to hear Creditor "admit" that
     the attorney's fees it has claimed for reviewing the bankruptcy plan and filing the claim are intended

17   to be "punishment" on the Objector for filling bankruptcy.)

18
         As the court addressed at the hearing and in this ruling, the prevailing party is entitled to

19   reasonable attorney's fees and costs regarding the issues on which Objector prevailed. Objector, as
     Objector's counsel and Creditor's counsel should well know from appearing in this court, cannot

20   view this as a windfall opportunity to demand excessive fees and costs.

21
         The court also notes that even though the attorney's fees portion of Proof of Claim No. 6-1

22   are for a partially inaccurate proof of claim, they also relate to a proof of claim in which some of it
     is correct, has the necessary documents, and provides information about the claim. The court could

23   have, easily and not as a "penalty," chosen to sustain that part of the Objection to the attorney's fees

24   as well. However, being fair and ruling based on the law and the evidence, the court concluded that
     as a whole, the partially erroneous proof of claim did not warrant the exclusion of the attorney's fees

25   included as part of the claim.

26
         While Creditor has the benefit of receiving the attorney's fees relating to the filing of Proof

27   of Claim No. 6-1, it has the corresponding privilege of paying Objector's reasonable attorney's fees
     in having to object to the inaccurate amounts asserting a pre-petition default (arrearage) in Proof of

28   Claim No. 6-1 which Creditor and Creditor's Counsel chose to defend.

Objection to the asserted pre-petition default that was necessary to be cured as stated in the Claim. The post-petition attorney's fees are not a "no-lose proposition" where the prevailing party can demand what they want, irrespective of the fees being reasonable and relate to the prevailing party portion of the litigation. If too aggressive, not only may such overreaching in fees be denied, Creditor might well come in and request prevailing party attorney's fees for having to litigate the attorney's fees issue - the same as Objector would assert the right to recover if presented with failing arguments against the request for reasonable attorney's fees and costs.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law on this Objection to Claim.[8] The court shall issue a separate order sustaining the Objection as to the asserted pre-petition default necessary to be cured and overrules the objection as to the $900.00 in legal fees cost incident to the secured proof of claim filed in this case.

The prevailing party Objector shall file and serve a post-order motion for attorney's fees and costs, or a Bill of Costs if no attorney's fees are to be requested by Objector, on or before **March 15, 2019.**

**Dated:** March 01, 2019

By the Court

Ronald H. Sargis, Judge
United States Bankruptcy Court

---

[8] Fed. R. Civ. P. 52; Fed. R. Bankr. P. 7052, 9014.

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Alexander G. Meissner, Esq.<br>20750 Ventura Blvd., Ste. 100<br>P.O. Box 4365<br>Woodland Hills, CA 91365-4365 | |